UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIO PIZZERIA & BAR HOSPITALITY, LLC and GIO PIZZERIA BOCA, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBERS ARP-74910-20 and ARP-75209-20,<br><br>Defendants. | No. 20-CV-3107 (RA) |

**MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITERS'
MOTION TO TRANSFER VENUE**

Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN &
DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy Nos. ARP-74910-20 and
ARP-75209-20
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................................ ii

I.      INTRODUCTION ............................................................................................................... 1

II.     FACTUAL BACKGROUND .............................................................................................. 1

III.    ARGUMENT ....................................................................................................................... 4

    A.  The Lawsuit Could Have Been Brought in the Southern District of Florida ............... 4

    B.  Transfer to the Southern District of Florida Better Serves the Convenience of Parties and Witnesses and the Interest of Justice ........................................................................ 5

        1.  Convenience of the Witnesses and Parties ............................................................... 6

        2.  Locus of Operative Facts .......................................................................................... 7

        3.  Forum's Familiarity with the Governing Law .......................................................... 9

        4.  Plaintiffs' Choice of Forum .................................................................................... 10

        5.  Availability of Process to Compel the Attendance of Unwilling Witnesses ............ 11

        6.  Relative Means of the Parties ................................................................................. 11

        7.  Location of Relevant Documents and Relative Ease of Access to Sources of Proof 12

        8.  Trial Efficiency and the Interest of Justice ............................................................. 12

IV.     CONCLUSION ................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**

*Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009...........13

*Atma Beauty, Inc. v. HDI Global Specialty SE, et al.*, Case No. 1:20-cv-21745 (S.D. Fla. April 27, 2020) ........................................................................................................................................3

*Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996) ................................6

*CAE USA, Inc. v. XL Ins. Co.*, 2011 WL 1878160, at *2 (M.D. Fla. May 17, 2011).....................9

*Contra Transatlantic Reins Co.*, 2003 WL 22743829, at *6.........................................................9

*Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) .......................6

*El Novillo Restaurant d/b/a DJJ Restaurant Corp., et al. v. Certain Underwriters at Lloyd's London, et al.*, Case No. 1:20-cv-21525 (S.D. Fla. April 9, 2020) .............................................3

*Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) ...................................11

*Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006).............................10, 13

*Hummingbird USA, Inc. v. Tex. Guar. Student Loan Corp.*, 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007) ............................................................................................................................12

*In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006)..............6, 7

*In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).....................4, 7, 12

*Indian Harbor Ins. Co. v. NL Envtl. Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013)...........................................................................................................................12

*Kanawha Ins. Co. v. Morrison*, 394 So.2d 1147, 1147 (Fla. 4th DCA 1961)...............................5

*Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992)......................................................10

*Praxair, Inc. v. Morrison Knudsen Corp.*, 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001) ....11

*Rindlfeisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010)..................10

*SA Palm Beach LLC v. Certain Underwriters at Lloyd's London, et al.*, Case No. 9:20-cv-80677 (S.D. Fla. April 22, 2020) ..........................................................................................................3

*Salzman v. Travelers Home & Marine Ins. Co.*, Case No. 16-cv-04008, 2016 WL 3951206, at *2 (S.D.N.Y. July 20, 2016) .............................................................................................................6

*Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 435 (S.D.N.Y. 2018) ...........7

*Sun Cuisine, LLC d/b/a Zest Restaurant and Market v. Certain Underwriters at Lloyd's London, et al.*, Case No. 1:20-cv-21827 (S.D. Fla. May 1, 2020).............................................................3

*Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, Case No. No. 106527294 ........3

*Transatlantic Reins Co. v. Continental Ins. Co.*, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) ..........................................................................................................................................9

*Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)...............9

*Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 180 (W.D.N.Y. 1997).4

**Statutes**

28 U.S.C. § 1332(d)(2)(C)..............................................................................................................5
28 U.S.C. § 1391(c)(3). ..................................................................................................................5
28 U.S.C. § 1404(a) ....................................................................................................................1, 4
F.S.A. § 626.906............................................................................................................................4, 5
Fed. R. Civ. Pro. 45(c)(1)..............................................................................................................11

*Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1203–04 (11th Cir. 1999) ....5

**Other Authorities**

*Foreign Travel Advice: USA*, GOV.UK ......................................................................................7
*United State District Courts – National Judicial Caseload Profile* ...........................................13

**I.     INTRODUCTION**.

Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. ARP-74910-20 and ARP-75209-20 (collectively, "Underwriters") move this Court to transfer the instant matter to the United States District Court for the Southern District of Florida (the "Southern District of Florida"), pursuant to 28 U.S.C. § 1404(a). The Plaintiffs in this putative class action, two Southern Florida companies, seek insurance coverage under two commercial property policies for alleged loss of business income related to their businesses in Southern Florida. The two insurance policies were issued to these Florida-based companies by a Floridian producing agent and a Floridian surplus lines agent. The sole nexus to the State of New York is that the policies provide that service of a complaint may be achieved on Underwriters' United States agent for service, who happens to be in New York. (*See* Ex. "A", Waiver of Service).

Plaintiffs' filing in this Court is nothing more than transparent forum shopping. The critical witnesses and evidence regarding are located in South Florida. The Southern District of New York's connection with this dispute is nonexistent. Further, transfer to the Southern District of Florida will allow this matter to proceed in coordination with the five currently pending putative class actions against members of the Lloyd's, London insurance market, arising out of COVID-19 and the same governmental orders. Thus, this Court should transfer this action to the Southern District of Florida to better serve the convenience of parties and witnesses and in the interest of justice.

**II.    FACTUAL BACKGROUND**

Underwriters are members of separate underwriting "syndicates" at Lloyd's, London, each of which are foreign insurers organized under the laws of the United Kingdom with their principal place of business in London, England. (Doc. 1, ¶ 14). Underwriters subscribed to Policy No. ARP-74910-20, issued to Plaintiff Gio Pizzeria & Bar Hospitality, LLC d/b/a Nick's New Haven Style

Pizzeria & Bar ("Gio New Haven."). That policy provides commercial property coverage for Gio New Haven's property at 2444 North University Drive, Coral Springs, Florida 33065. (*See* Doc. 1-1). Underwriters also subscribed to Policy No. ARP-75209-20, issued to Gio Pizzeria Boca, LLC d/b/a Nick's New Haven Style Pizzeria & Bar ("Gio Boca Raton"). That policy insures Gio Boca Raton's property at 2240 Northwest 19 Street, Suite 904, Boca Raton, Florida 33431. (*See* Doc. 1-2) (collectively, the "Policies"). Gio New Haven and Gio Boca Raton are both Florida limited liability companies with their principal place of business in South Florida. (Doc. 1, ¶¶ 12-13). They obtained the Policies through their Florida producing agent, purchased the Policies in Florida, and the Policies were delivered in Florida, where they reside. (*See* Doc. 1-1, p. 8; Doc. 1-2, p. 8). Florida surplus lines taxes were paid for each of the Policies. (*Id.*).

The relevant governmental orders were issued by the City of Boca Raton, Coral Springs, Broward County, and the Governor of Florida and were directed to businesses in Florida. The orders sought to prevent the spread of the coronavirus, and the disease it causes, COVID-19,[1] in Florida. (*See* Doc. 1, ¶¶ 30–34). The orders required restaurants in Florida, such as Plaintiffs, to stop dine-in operations, although delivery and take-out services were permitted to continue. (*See id.*). Plaintiffs submitted insurance claims for business interruption damages at each of their locations to Underwriters, which they allege Underwriters denied. (*See id.* at ¶ 9).[2]

On April 17, 2020, Plaintiffs filed the Complaint here (the "Lawsuit"). In the Lawsuit, Plaintiffs seek relief on their own behalf and on behalf of all others "similarly situated," which Plaintiffs broadly define expansively with "nationwide" class definitions. (*Id.* at ¶ 41). The Lawsuit asserts four counts of breach of contract under four different provisions of the Policies and four

---

[1] For simplicity, the virus and the disease it causes will be referred to collectively as "COVID-19."
[2] For the purposes of this Motion to Transfer, Underwriters do not address the veracity of Plaintiffs' allegations, the merits of the Lawsuit, nor whether Plaintiffs are appropriate class representatives. Underwriters specifically reserve any and all arguments or defenses to these issues.

2

declaratory judgment counts under those same policy provisions. (*Id.* at ¶¶ 51–85). The Lawsuit alleges that Underwriters breached these provisions and seeks a declaration that Plaintiffs' and other class members' losses under these provisions are insured under their policies. (*Id.* at ¶¶ 86–113).

The epicenter of COVID-19 class action litigation against the Lloyd's market is the Southern District of Florida. Before Plaintiffs filed suit here, various syndicates in the Lloyd's, London insurance market had been sued in a putative class action by two other restaurants related to COVID-19 in the Southern District of Florida. *See El Novillo Restaurant d/b/a DJJ Restaurant Corp., et al. v. Certain Underwriters at Lloyd's London, et al.*, Case No. 1:20-cv-21525 (S.D. Fla. April 9, 2020). In that case, counsel have already had their joint preliminary conference and submitted a proposed scheduling order to the court. Moreover, an initial hearing has been set by the court for July 10, 2020. Within days of the filing of this lawsuit, two more putative class actions were filed by Florida restaurants and one by a Florida beauty parlor against members of the Lloyd's market in the Southern District of Florida. *See SA Palm Beach LLC v. Certain Underwriters at Lloyd's London, et al.*, Case No. 9:20-cv-80677 (S.D. Fla. April 22, 2020); *Atma Beauty, Inc. v. HDI Global Specialty SE, et al.*, Case No. 1:20-cv-21745 (S.D. Fla. April 27, 2020); *Sun Cuisine, LLC d/b/a Zest Restaurant and Market v. Certain Underwriters at Lloyd's London, et al.*, Case No. 1:20-cv-21827 (S.D. Fla. May 1, 2020). Further, a putative class action was filed in Miami-Dade County Florida state court against certain members of the Lloyd's market, which is subject to removal under the Class Action Fairness Act. *See Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, Case No. No. 106527294, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (April 21, 2020).

## III. ARGUMENT

The Southern District of Florida is by far the most appropriate venue for this Lawsuit. Under 28 U.S.C. §1404(a), a district court may, "[f]or the convenience of parties and witnesses . . . transfer any civil action to any other district or division where it may have been brought." "The inquiry on a motion to transfer is two-fold." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998). First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. And, second the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," transfer is appropriate. *Id.* (citing *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 180 (W.D.N.Y. 1997)). In making the second determination, courts consider several factors, such as:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Id.* Here, the Lawsuit could, and should, have been brought in the Southern District of Florida. The balance of the above-referenced factors strongly favor transfer to that venue at this time. Accordingly, the Court should grant Underwriters' Motion to Transfer.

### A. The Lawsuit Could Have Been Brought in the Southern District of Florida

As a threshold issue, the Lawsuit undoubtedly could have been brought in the Southern District of Florida. The Southern District of Florida would have personal jurisdiction over Underwriters pursuant to F.S.A. § 626.906, Florida's long-arm statute "designed to subject out-of-state insurers who are unauthorized to do business in Florida to the jurisdiction of Florida courts," by virtue of the Policies having been issued in Florida. *See Walter v. Blue Cross & Blue Shield*

4

*United of Wis.*, 181 F.3d 1198, 1203–04 (11th Cir. 1999) (citing F.S.A. § 626.906). Personal jurisdiction under F.S.A. § 626.906 attaches when unauthorized insurers issue or deliver an insurance policy in Florida. *See Kanawha Ins. Co. v. Morrison*, 394 So.2d 1147, 1147 (Fla. 4th DCA 1961). Moreover, both Policies contain a service of suit clause, which states in part: "Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States." (*See* Doc. 1-1, p. 6; Doc. 1-2, p. 6). Further, Plaintiffs are both Florida limited liability companies with their principle place of business located in the Southern District of Florida.

As the Lawsuit is a putative class action where the matter in controversy exceeds the sum or value of $5,000,000, Plaintiffs are citizens of Florida and Underwriters include at least one member who is a subject of a foreign state, the Southern District of Florida would have subject matter jurisdiction over the Lawsuit. *See* 28 U.S.C. § 1332(d)(2)(C) (providing that district courts shall have original jurisdiction over civil class actions so long as the amount in controversy is met and "any member of a class of plaintiffs is a citizen of a State and any defendant is a . . . citizen or subject of a foreign state"). Finally, as foreign insurers, venue for suit against Underwriters is proper in any judicial district. *See* 28 U.S.C. § 1391(c)(3). Thus, the Lawsuit could have been properly brought in the Southern District of Florida.

### B. Transfer to the Southern District of Florida Better Serves the Convenience of Parties and Witnesses and the Interest of Justice

Having established that the Lawsuit could have been brought in the Southern District of Florida, this Court should weigh whether transfer to that venue better serves the convenience of the parties and witnesses, as well as the interest of justice. As shown below, each of the nine previously cited factors support a transfer of this Lawsuit because, although Plaintiffs chose this Court as a forum, "no operative fact connects this controversy to this state." *Salzman v. Travelers*

5

*Home & Marine Ins. Co.*, Case No. 16-cv-04008, 2016 WL 3951206, at *2 (S.D.N.Y. July 20, 2016). Meanwhile, Southern Florida has multiple meaningful ties to the dispute sufficient to warrant a transfer to that district.

### 1. Convenience of the Witnesses and Parties

The first two factors are discussed here together, as Southern Florida is the home of both Plaintiffs and a critical mass of identifiable potential witnesses. The convenience of witnesses is generally considered one of the most important factors when determining whether to transfer an action. *See In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). To show that this factor favors transfer, the moving party must "identify the witnesses located in the transferee district upon whom it intends to rely and describe the contents of their potential testimony." *Id.*

With the exception of Underwriters, every identifiable witness is located in Southern Florida. (*See* Ex. "B," Affirmation of Peter J. Fazio). Plaintiffs, whose testimony regarding the basis for their claim would be crucial to Underwriters' defense, are both located in Southern Florida. Plaintiffs' employees, who worked in their two southern Florida restaurants, presumably live in Florida. Plaintiffs' agent that procured their insurance is also in Miami, Florida, and the surplus lines agent is in Hollywood, Florida, just north of Miami. Therefore, the identifiable third-party witnesses who could give potentially relevant testimony concerning the claim and the Policies are also located in South Florida. Even if Plaintiffs were to speculate concerning some tangential witness in the Southern District of New York,[3] the critical mass of relevant witnesses

---

[3] Of course, the agent for service in New York, who merely accepts service, would have no relevant evidence. Furthermore, because Underwriters anticipate that Plaintiffs may raise this argument in response to this Motion, Underwriters note that the Policy's Service of Suit Clause does not mean that Underwriters waived the right to seek to have this action transferred. *See Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) ("[T]he Service of Suit Clause is not a 'choice of forum' provision, and does not prescribe the forum for the action, but instead entails no more than Lloyd's voluntary submission to the jurisdiction of the United States.") (internal quotations omitted); *see also Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996) (noting that

6

are located in South Florida, which supports transfer. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 396.

The convenience of the parties also points to Florida. Plaintiffs are Florida corporations with their principal places of business in South Florida. Therefore, shifting the Lawsuit to the Southern District of Florida makes this litigation far more convenient for Plaintiffs. With respect to the putative uncertified alleged class, "any plaintiffs not residing in New York would be required to travel irrespective of whether the trial is held in [Florida] or New York." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998). South Florida is similarly no less convenient for Underwriters, whose witnesses must cross the Atlantic regardless of whether the Lawsuit is in Florida or New York.[4]  But, given that there are the five other pending class actions in South Florida, it certainly will be more convenient for Underwriters to have the class action litigation pending in the Southern District of Florida. Thus, transfer to the Southern District of Florida serves the convenience of both the parties and the witnesses.

### 2. Locus of Operative Facts

When determining the locus of operative facts in insurance coverage disputes, the locus in question is "the site of the execution of the contract." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 435 (S.D.N.Y. 2018). "Courts have also emphasized the site of negotiations, purchase, and delivery of the policy in question when assessing the locus of operative facts in insurance coverage disputes." *Id.* at 436.

---

a Service of Suit Clause "does not bind the parties to litigate in a particular forum, or give the insured the exclusive right to choose a forum unrelated to the dispute").

[4] That is assuming that Underwriters' witnesses are able to physically travel to the United States at all, given that travel from the UK to the US has been prohibited since March 16, 2020. *See Foreign Travel Advice: USA*, GOV.UK (last visited May 13, 2020), https://www.gov.uk/foreign-travel-advice/usa/coronavirus.

Underwriters' headquarters are located in London, hence, its location carries no weight in the application of this factor. The Policies, however, were delivered in Florida. Plaintiffs' producing agent negotiated and purchased the Policies in Florida, through Underwriters' agent in Florida, Advanced E&S Group. (*See* Doc. 1-1, p. 8; Doc. 1-2, p. 8). Plaintiffs' Complaint cites the relevant governmental orders, which were all issued in Florida by Florida state and local officials:

30. On March 17, 2020, Boca Raton issued a civil authority order requiring the closing of bars and from selling alcohol and banning dine-in eating in Boca Raton restaurants. This order has been in effect since March 17, 2020.

31. On March 17, 2020, Florida Governor Ron DeSantis issued a civil authority order restricting bars from selling alcohol and ordering every restaurant to limit its occupancy to 50% of current building capacity. This order has been in effect since March 17, 2020.

32. On March 18, 2020, Coral Springs issued a civil authority order requiring the closing of bars and effectively limiting the capacity of restaurants by requiring social distancing measures. This order has been in effect since March 18, 2020.

33. On March 20, 2020, Florida Governor Ron DeSantis issued a civil authority order requiring the suspension of alcohol sales for on-premises consumption and the suspension of all dine-in eating at restaurants. This order has been in effect since March 20, 2020.

34. On March 22, 2020, Broward County issued a civil authority order requiring the closure of bars in Broward County and banning dine-in eating in Broward County restaurants. This order has been in effect since March 22, 2020.

35. The Florida, Broward County, Coral Springs, and Boca Raton Closure Orders were issued in response to the rapid spread of COVID-19 throughout Florida.

(Doc. 1, ¶¶ 30-35). Further, Plaintiffs admit that to establish civil authority coverage, they will need to demonstrate the existence of "damage to property near the Covered Property," which is in Florida, not New York. (*Id.*, ¶ 64).

Therefore, the discernible locus of operative facts surrounding the interpretation of the Policies and the governmental orders, which is the core of this dispute, is found in South Florida, further supporting transfer to the Southern District of Florida.

### 3.     Forum's Familiarity with the Governing Law

Whether the Lawsuit were adjudicated in Florida or New York, Florida law governs the interpretation of the Policies. *See CAE USA, Inc. v. XL Ins. Co.*, 2011 WL 1878160, at *2 (M.D. Fla. May 17, 2011) (applying rule of *lex loci contractus* to hold that insurance policy was governed by law of state where last act necessary to complete the contract was, being the state to which it was delivered); *Transatlantic Reins Co. v. Continental Ins. Co.*, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) (stating the factors that New York courts look to when determining which state's law apply to insurance contracts, including location of the risk, policyholder's principal place of business, where policy was delivered, and location of the broker, among others). Normally, a case should be "tried in a forum at home with the governing law." *Viacom Int'l, Inc. v. Melvin Simon Prod., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). This factor is given greater weight when the governing law is shown to be unclear, unsettled or difficult. *Contra Transatlantic Reins Co.*, 2003 WL 22743829, at *6.

Here, Underwriters believe Florida law is relatively settled on some, but not all, the issues before the Court. Even where legal authority exists, Plaintiffs undoubtedly will try to distinguish existing case law on the basis that COVID-19 differs from the contaminants and viruses at issue

9

in prior cases. Specifically, Plaintiffs' Complaint asks the Court to decide, among other issues: whether COVID-19 is capable of causing "direct physical loss" under the Policies and whether the subject government orders triggered the Policies' "civil authority" coverage. (*See* Doc. 1, ¶¶ 57, 65). These issues are in addition to potential coverage defenses Underwriters may assert under the Policies, such as the applicability of the Policies' contamination exclusions. (*See* Doc. 1-1, pp. 23, 82; Doc. 1-2, pp. 24, 83). The United States has not experienced a pandemic of this gravity, considering the widespread government response, in its entire history. As a result, the legal landscape regarding issues has not been fully shaped by state law; consequently, the interpretation of the Policies' language under Florida law is best left to a Florida court.

### 4.   Plaintiffs' Choice of Forum

Plaintiffs' choice of forum should be given absolutely no weight, as the decision to bring the Lawsuit before this Court is unabashed forum shopping. While a court generally should defer to a plaintiff's choice of forum, "[t]his maxim bears little weight . . . in a putative class action involving plaintiffs who are scattered throughout the country." *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006). Even less consideration should be given to a plaintiff's forum selection when "(1) the operative facts have little or no connection with the forum chosen by a plaintiff, or (2) a plaintiff chooses a forum that is not his or her residence." *Rindlfeisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010) (internal quotations omitted). When a plaintiff seeks to try a case in a forum that has "little or no connection with the parties or the subject matter, a plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992).

The vast majority of operative facts and a critical mass of relevant identifiable witness are connected to or are located in South Florida, where Plaintiffs reside and where their businesses are located. New York has no connection to this controversy, which shows that Plaintiffs' choice to

file the Lawsuit with this Court was transparent forum shopping. Accordingly, Plaintiffs' choice of forum should be given no weight at all, and this Court should transfer the Lawsuit to an appropriate venue: the Southern District of Florida.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor also weighs in favor of transfer to the Southern District of Florida. Generally, the availability of process to compel the attendance of unwilling witnesses is "relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Praxair, Inc. v. Morrison Knudsen Corp.*, 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001). To the extent that it is necessary to compel the attendance of any unwilling witnesses, all relevant identifiable witnesses are located either in South Florida or the United Kingdom. (*See* Ex. B). The federal courts' subpoena power has a limited geographic scope; specifically, it only reaches persons who reside, are employed, or regularly transact business within 100 miles of the court, for purposes of trials or hearings. *See* Fed. R. Civ. Pro. 45(c)(1). Any witnesses in South Florida, which, as established, include the critical mass of identifiable key witnesses in this action, would be outside of this Court's subpoena power. By contrast, the Southern District of Florida would be more than capable of compelling the attendance of such unwilling witnesses.

### 6. Relative Means of the Parties

Here, Underwriters likely have greater financial resources than Plaintiffs—but this does not mean this factor weighs in Plaintiffs' favor. *See Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) (noting that even though defendants had greater resources than plaintiff, plaintiff did not demonstrate how pursuing action in different venue would increase its expended costs, and thus the factor was given little weight); *see also Hummingbird USA, Inc. v. Tex. Guar.*

11

*Student Loan Corp.*, 2007 WL 163111, at *3 (S.D.N.Y. Jan. 22, 2007) (stating that when both parties are corporations, "this factor is entitled to little weight"). In fact, transfer to South Florida would allow Plaintiffs to make better use of their means, as litigating closer to their principal place of business should allow greater conservation of their financial resources than litigating out-of-state, in New York. Meanwhile, litigating in Florida or New York has no substantial effect on the cost Underwriters must expend to litigate this dispute. Accordingly, this factor weighs in favor of transfer or, alternatively, should be given no weight at all.

### 7. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

This factor should not weigh heavily into the Court's analysis. Yet, its application still supports transfer to the Southern District of Florida. Any relevant documents in Underwriters' possession are located in the United Kingdom or with their agent, Advanced E&S Group located in Hollywood, Florida.  (Doc. 1-1, p. 5; Doc. 1-2, p. 5). Documents in Plaintiffs' possession, as well as any sources of proof, such as evidence at the Properties, would be located in South Florida. Evidence belonging to the producing agent would also be located in Southern Florida, as well as any documents related to the governmental orders at issue. Thus, this factor supports transfer to the Southern District of Florida.

### 8. Trial Efficiency and the Interest of Justice

As displayed by application of all of the above factors, the interests of justice favor transfer of this case to the Southern District of Florida. This Court has the discretion "to transfer an action to where the trial would be best expedient and just." *See In re Nematron Cop. Sec. Litig.*, 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998). "The relevant docket conditions of the transferor and transferee courts . . . are relevant" to such a determination. *Indian Harbor Ins. Co. v. NL Envtl. Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013).

The docket conditions weigh in favor of transfer to the Southern District of Florida. "It is undeniable that the Southern District of New York is one of the busiest districts in the country." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). This Lawsuit could reach a more expeditious resolution in the Southern District of Florida. In 2019, the median time from filing to disposition in the Southern District of New York was 6.5 months, while the median time from filing to trial for civil actions was 31.1 months.[5] By contrast, during the same year, in the Southern District of Florida, the median time from filing to disposition was 3.9 months and the median time from filing to trial was 15.8 months.[6] Therefore, the data demonstrates this Lawsuit could be resolved faster by transferring it to the proper venue.

Furthermore, the Southern District of New York has no tangible connection to this controversy. Therefore, the discovery and trial processes would be more conveniently and quickly conducted in the Southern District of Florida. *See, e.g.*, *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) (noting that the trial would be efficiently conducted in the district where the majority of relevant documents were located). Otherwise the parties would be required to conduct discovery almost entirely in Southern Florida and then litigate the case in Southern New York, which is a needless inefficiency.

Finally, given the presence of five other COVID-19 business interruption class actions against members of the Lloyd's market currently pending in the Southern District of Florida, discovery efficiencies can be found by transferring the case.

---

[5] *See United State District Courts – National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last visited April 29, 2019).
[6] *Id.*

13

## IV.     CONCLUSION

For the foregoing reasons, this action should be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which is a more appropriate venue for this action to procced and where it should have been brought originally.

Respectfully submitted this 29th day of July, 2020.

*Peter J. Fazio*

BY:  Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN &
DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy No. XSZ146282
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

To: All Parties VIA ECF

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2020, the foregoing Memorandum of Law in Support of the Motion to Transfer was electronically filed with the Clerk of Court, United States District Court for the Southern District of New York and said Memorandum of Law shall be deemed served by electronic notification of the Court's CM/ECF system as copy was served via e-mail upon the following:

| | |
|---|---|
| Greg G. Gutzler<br>**DICELLO LEVITT GUTZLER LLC**<br>444 Madison Avenue, Fourth Floor<br>New York, New York 10022 | Adam J. Levitt<br>Amy E. Keller<br>Daniel R. Ferri<br>Mark Hamill<br>Laura E. Reasons<br>**DICELLO LEVITT GUTZLER LLC**<br>Ten North Dearborn Street, Sixth Floor<br>Chicago, Illinois 60602 |
| Mark A. DiCello<br>Kenneth P. Abbarno<br>Mark Abramowitz<br>**DICELLO LEVITT GUTZLER LLC**<br>7556 Mentor Avenue<br>Mentor, Ohio 44060 | Mark Lanier<br>Alex Brown<br>Skip McBride<br>**THE LANIER LAW FIRM PC**<br>10940 West Sam Houston Parkway North<br>Suite 100<br>Houston, Texas 77064 |
| Evan Janush<br>**THE LANIER LAW FIRM PC**<br>126 East 56th Street, Sixth Floor<br>New York, New York 10022 | Timothy W. Burns<br>Jeff J. Bowen*<br>Jesse J. Bair<br>Freya K. Bowen<br>**BURNS BOWEN BAIR LLP**<br>One South Pinckney Street, Suite 930<br>Madison, Wisconsin 53703 |
| Douglas Daniels<br>**DANIELS & TREDENNICK**<br>6363 Woodway, Suite 700<br>Houston, Texas 77057 | |