# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GIO PIZZERIA & BAR HOSPITALITY, LLC and GIO PIZZERIA BOCA, LLC, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBERS ARP-74910-20 and ARP-75209-20,<br><br>       Defendants. | No. 20-CV-3107 (RA) |

## UNDERWRITERS' MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITERS' MOTION TO DISMISS THE COMPLAINT

Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN & DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. ARP-74910-20 and ARP-75209-20
Office & P.O. Address
600 Third Avenue
New York, NY 10016
212-593-6700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................2

    A.   THE POLICIES ..............................................................................................2

    B.   THE INSURANCE CLAIM ...........................................................................5

III.   LEGAL STANDARD ..........................................................................................7

IV.    ARGUMENT .......................................................................................................8

    A.   FLORIDA LAW GOVERNS THE INTERPRETATION OF THE POLICIES .........8

    B.   PLAINTIFFS' COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTIES COVERED BY THE POLICIES .................................9

    C.   PLAINTIFFS HAVE NOT PLED A VALID "CIVIL AUTHORITY" CLAIM .......14

    D.   COVERAGE IS BARRED BY THE POLLUTION EXCLUSIONS .........................19

    E.   COUNTS I, II, III AND IV FAIL TO ALLEGE UNDERWRITERS HAVE BREACHED THE POLICY ....................................................................................23

V.     CONCLUSION ..................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) ...17

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ..............................8, 10

*Arias-Bonello v. Progressive Select Ins. Co.*, No. 0:17-CV-60897-UU, 2017 WL 7792704, at *5 (S.D. Fla. Aug. 8, 2017)...........................................................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).........................................................................7, 8, 24

*Bahama Bay II Condo. Ass'n, Inc v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1278 (M.D. Fla. 2019) ...............................................................................................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...........................................................7, 8

*BMS Enters., Inc. v. Gen. Star Indem. Co.*, No. 14-cv-3375, 2015 WL 13650038, at *2 (S.D.N.Y. Mar. 11, 2015).........................................................................................................................9

*By Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006) ...............................................................................................................................17

*Cammarota v. Penn-Am. Ins. Co.*, No. 17-CV-21605-Williams, 2017 WL 5956881, at *2 (S.D. Fla. Nov. 13, 2017)....................................................................................................................19

*Certain Underwriters at Lloyd's London v. B3, Inc.*, 262 P.3d 397, 400-401 (Okla. Ct. App. 2011) ....................................................................................................................................22

*City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004).........................................................................................................................................18

*Continental Food Prods., Inc. v. Ins. Co. of N. Am.*, 544 F.2d 834, 837 n. 1 (5th Cir. 1977) ......25

*Cruz v. Underwriters at Lloyd's London*, No. 8:14-CV-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014)...............................................................................................23, 24

*Davidson v. Georgia*, 622 F.2d 895, 897 (11th Cir. 1980) .......................................................24

*Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) ................................................................................................................................14, 21

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011)...................16

*Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 602 (S.D. Fla. 1997)...................10

*First Specialty Ins. Corp.  See* 2009 WL 2524613, at *4-5........................................................22

*First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009).........................................................................................21

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020).........13

*Grosso v. Biaggi*, 558 F. App'x 36, 36 (2d Cir. 2014)................................................................8

*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)........................................................................7

*Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) ................................................................................................................................................12

*Hueber v. McCune*, 589 F. App'x 9, 10 (2d Cir. 2014) .............................................................7

*Jacobs v. Tempur-Pedic Int'l., Inc.*, 626 F.3d 1327, 1332-33 (11th Cir. 2010) ...........................7

*James River Ins. Co. v. Epic Hotel, LLC*, No. 11-CV-24292-UU, 2013 WL 12085984, at *4 (S.D. Fla. Jan. 9, 2013)...............................................................................................................21

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007).......................17

*Lubell & Rosen LLC v. Sentinel Ins. Co.*, Ltd., No. 0:16-CV-60429-WPD, 2016 WL 8739330, at *4 (S.D. Fla. June 10, 2016) ......................................................................................10

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ...............................................................................................12, 13

*Mears v. Allstate Indem. Co.*, 336 F. Supp. 141, 146 (E.D.N.Y. 2018)......................................11

*MJCM, Inc. v. Hartford Cas. Ins. Co.*, No. 8:09-CV-2275-T-17TBM, 2010 WL 1949585, at *7 (M.D. Fla. May 14, 2010) ..............................................................................................19

*N.P.V. Realty Corp. v. Nationwide Mut. Ins. Co.*, No. 8:11-CV-1121-T-17TBM, 2011 WL 4948542, at *4 (M.D. Fla. Oct. 17, 2011)...........................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Texpak Grp. N.V.*, 906 So. 2d 300, 302 (Fla. 3d DCA 2005) ......................................................................................................................10

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ...............................................................................................................13

*Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006)...........................21, 22

*Odom v. Columbia Univ.*, 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995) ........................................11

*Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010) ...............................................................................................................14

*Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)................................8

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005).......................13

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ..............12

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007).........................................................................18

*Residences at Ocean Grande, Inc. v. Allianz Global Risks U.S. Ins. Co.*, No. 07-22656-CIV, 2009 WL 7020044, at *14 (S.D. Fla. Sept. 9, 2009) ..........................................................24

*Rockhill Ins. Co. v. Northfield Ins. Co.*, 297 F. Supp. 3d 1279, 1286 (M.D. Fla. 2017) ..............11

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) ..............................17

*S.O. Beach Corp. v. Great Am. Ins. Co. of N.Y.*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018)...10

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) ........................................7

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)....................................8

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020).....................................................................................................................................12

*Somethings Fishy Enter., Inc. v. Atl. Cas. Ins. Co.*, 415 F. Supp. 3d 1137, 1142 (S.D. Fla. 2019) ...............................................................................................................................................15

*Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 168 (Fla. 2003) ..........................24

*Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995).............................................................................................................................17, 18

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)..................14, 23

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1293 (M.D. Fla. 2016) .....10

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016)......................................................................................11, 24

*U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003)........................22

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) .......18

iii

*Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) .................................................................................24

*Zurich Ins. Co. v. Shearson Lehman Hutton*, 642 N.E.2d 1065, 1068 (N.Y. 1994)......................9

**Statutes**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................7

**Other Authorities**

10A Couch on Ins. § 148:46 (3d. Ed. West 1998)....................................................................12

Alping Wu, et al, *Genome Composition & Divergence of the Novel Coronavirus (2019-nCov) Originating in China*, Commentary, 27 Cell Host & Microbe 325, 326 (Mar. 11, 2020) ........22

*COVID-19, MERS & SARS*, NAT'L INST. OF ALLERGY & INFECTIOUS DISEASES (April 6, 2020) 22

https://youtu.be/Dsy4pA5NoPw .............................................................................................13

## I.     __INTRODUCTION__

Plaintiffs in this putative class action, Gio Pizzeria & Bar Hospitality, LLC and Gio Pizzeria Boca, LLC ("Plaintiffs"), seek insurance coverage for business interruption related to the COVID-19 pandemic from Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. ARP-74910-20 and ARP-75209-20 (collectively, "Underwriters").

Plaintiffs' Complaint must be dismissed for several reasons:

(1) The insurance policies at issue are Commercial Property policies that insure Plaintiffs' properties against direct physical loss or damage. The policies do provide "Business Income" coverage, but for that coverage to apply, consistent with the property coverage being provided, there must be direct physical loss of or damage to the insured properties. Plaintiffs' Complaint fails to sufficiently allege that fundamental predicate, nor could it under the alleged circumstances.

(2) The policies also provide Business Income coverage if a civil authority prohibits access to insured property because of direct physical damage to nearby property. Again, Plaintiffs fail to allege the requisite direct physical damage to nearby property or that access to the insured properties has been prohibited because of such direct physical damage.

(3) Even if the policies' requirements discussed above had been met, coverage is barred by the pollution exclusions, which preclude coverage for any claim related to substances that pose a threat to human health. Here, Plaintiffs' insurance claims arise out of the Coronavirus, which poses a threat to human health.

(4) The Complaint fails to sufficiently allege causes of action for breach of contract, as Plaintiffs provide no supporting facts to support their claims.

Accordingly, Underwriters' Motion to Dismiss should be granted.

## II.   FACTUAL BACKGROUND

### A.   THE POLICIES

Gio Pizzeria & Bar Hospitality LLC ("Gio Pizzeria") owns and operates a restaurant named "Nick's New Haven Style Pizzeria & Bar" in Coral Springs, Florida. (Doc. 1, ¶ 1). Gio Pizzeria Boca, LLC. ("Gio Pizzeria Boca") owns and operates a restaurant in Boca Raton, Florida, also named "Nick's New Haven Style Pizzeria & Bar." (*Id.*).

Underwriters subscribed to two policies that insure the properties on which the restaurants are located (the "Properties"). Policy No. ARP-74910-20, issued to Gio Pizzeria, insured the property located at 2444 N. University Drive, Coral Springs, Florida 33065,[1] for the policy period of June 1, 2019, to June 1, 2020. (Exhibit A).[2] Policy No. ARP-75209-20, issued to Gio Pizzeria Boca, insured the property located at 2240 NW 19 Street, Suite 904, Boca Raton, Florida 33431, for the policy period of February 21, 2020, to February 21, 2021. (Exhibit B). Except for their applicable limits and policy periods, the Policies afford nearly identical coverage.

The Policies' insuring clauses provide:

### A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the Premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policies, Exhibits A and B, Form CP 00 10 10 12, at p. 1 of 16). "Covered Cause of Loss" is defined in the Policies as "direct physical loss unless the loss is excluded or limited in this policy." (Policies, Exhibits A and B, Form CP 10 30 10 12, at p. 1 of 10).

---

[1] The insured properties are identified on the Declarations Pages of the Policies.
[2] Both the Policies are attached to the Complaint and reattached here for the Court's convenience. They are referred collectively here as the "Policies."

While the Policies do provide coverage for loss of "Business Income," the loss must also arise out of direct physical loss of or damage to the insured property as identified in the Policies' Declarations:

**1. Business Income**

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". **The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations** and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

(Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 1 of 9) (emphasis added).

The Policies also provide coverage for "Extra Expense" which is defined as:

**2. Extra Expense**

   **a.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage to property** caused by or resulting from a Covered Cause of Loss.

(Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 1 of 9) (emphasis added). As noted above, "Business Income" coverage is only provided during the "period of restoration", which is defined as:

… the period of time that:

a. Begins:

   (1) 72 hours after the time of **direct physical loss or damage** for Business Income Coverage; or

   (2) Immediately after the time of **direct physical loss or damage** for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

3

> (1) The date when the property at the described premises ***should be repaired, rebuilt or replaced*** with reasonable speed and similar quality; or
>
> (2) The date when business is resumed at a new permanent location.

(Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 9 of 9) (emphasis added). Accordingly, business income and extra expense coverage is provided only if the loss is caused direct physical loss or damage resulting from a covered cause of loss. Even then, coverage is only provided for that time needed to repair, rebuild, or replace the damaged property.

The Policies provide "Civil Authority" coverage but, and again consistent with the fundamental principle of a property insurance policy, direct physical loss or damage to property is required as the civil authority action must result from damage to property caused by a Covered Cause of Loss:

### a. Civil Authority

> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a ***Covered Cause of Loss causes damage to property other than property at the described premises***, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by ***action of civil authority that prohibits access to the described premises***, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority ***as a result of the damage***, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

(Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 2 of 9).

The Policies contain endorsements that modify the Civil Authority coverage with "Florida Changes":

> The following applies to the Additional Coverage – Civil Authority under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:
>
> 1. The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.
>
> 2. The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.
>
> 3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

(Policies, Exhibits A and B, Form CP 01 25 02 12, at p. 2 of 3). However, none of those modifications change the basic coverage requirements of direct physical loss of or damage to nearby property and a prohibition on access to the insured property because of such damage. Thus, among the requirements to trigger civil authority coverage, damage to property must prohibit access to the Properties.

The Policies contain certain applicable exclusions. Among those exclusions are broad pollution exclusions. (Policies, Exhibits A and B, Form NMA2342 and Form CP 10 30 10 12, at p. 4 of 10).

## B.   THE INSURANCE CLAIM

On March 26, 2020, Plaintiffs submitted claims for business interruption as a result of Florida state and local orders related to COVID-19 (the "Claims"). A short time later, Plaintiffs filed this lawsuit. (Doc. 1). In the Complaint, Plaintiffs allege that the "the presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of businesses at a wide range of establishments, including civil authorities with jurisdiction over

Plaintiffs' businesses." (Doc. 1 ¶ 29). Notably, however, the Complaint is devoid of any allegations that Plaintiffs' restaurants were, in fact, closed or that Plaintiffs (or their employees) were prohibited from accessing the premises as a result of COVID-19 or any related governmental orders. Similarly, the Complaint fails to provide any description of the "direct physical loss and damage", but instead gives an incomplete recitation of the various orders.

On March 16, 2020, the city of Boca Raton declared a Local State of Emergency and directed bars and nightclubs to close, but permitted restaurants to stay open for take-out and delivery services. (Doc. 1 ¶ 30; Exhibit C, City of Boca Raton Emergency Declaration). On March 17, 2020, Florida Governor Ron DeSantis issued Executive Order 20-68, which directed restaurants to adhere to social distancing guidelines by limiting the number of patrons allowed within a building and requiring patrons to maintain a six-foot distance. (Doc. 1 ¶ 31; Exhibit D, Florida Executive Order 20-68). This order did not mandate restaurants close. (Exhibit D).

On March 18, 2020, the city of Coral Springs issued Emergency Order 2020-05. (Doc. 1 ¶ 32; Exhibit E, Coral Springs Emergency Order 2020-05). This order required restaurants and other places that serve food for consumption on premises to maintain a six-foot distance between patrons. (Exhibit E). This order also did not mandate restaurants close. (*Id.*). On March 20, 2020, Governor DeSantis issued Executive Order 20-71, requiring restaurants to suspend on-premises food consumption but allowing restaurants to remain operational for delivery and take-out services. (Doc. 1 ¶ 33; Exhibit F, Florida Executive Order 20-71). This order also expressly allowed employees and other personnel to access the establishments. (Exhibit F). Moreover, this order lifted the restrictions on restaurants selling alcohol for consumption off-premises, thereby allowing restaurants to provide alcohol delivery with food purchases. (*Id.*).

On March 22, 2018, Broward County issued Executive Order 20-01. (Doc. 1 ¶ 34; Exhibit G, Broward County Emergency Order 20-01). This order directed the closure of non-essential businesses except to the extent necessary to perform "minimum basic operations." (Exhibit G). Restaurants, however, were deemed to be essential businesses and were permitted to continue operations consistent with Governor DeSantis' Executive Orders. (*Id.*).

All these measures were put in place to promote social distancing and slow the spread of COVID-19 by minimizing contact between residents. (Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G). These orders were not issued as a result of any "direct physical loss of or damage" to property, as required under the Policies to trigger coverage. Moreover, the orders did not "prohibit access" to the Properties, as they specifically allow employees and other personnel to enter the premises. In fact, the April 1, 2020 Executive Order encouraged restaurants to "provide delivery, carry-out or curbside service." (Exhibit H, Florida Executive Order 20-91).

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Jacobs v. Tempur-Pedic Int'l., Inc.*, 626 F.3d 1327, 1332-33 (11th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," but must allege more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to accept the labels and legal conclusions in the complaint as true. *See Hueber v. McCune*, 589 F. App'x 9, 10 (2d Cir. 2014); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009).

To survive a motion to dismiss, a complaint must contain facts that, when assumed to be true, sufficiently "state a claim to relief that is *plausible on its face*." *Iqbal*, 556 U.S. at 678 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 570); *see also Grosso v. Biaggi*, 558 F. App'x 36, 36 (2d Cir. 2014) (citing *Twombly*, 550 U.S. at 570).

Moreover, "when the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and quotations omitted).

## IV.   <u>ARGUMENT</u>

### A.   **FLORIDA LAW GOVERNS THE INTERPRETATION OF THE POLICIES**

Despite Plaintiffs' obvious forum shopping, Florida law will govern the interpretation of the Policies.[3] When the laws of two states potentially apply to a contract, "New York employs a 'center of gravity' or 'grouping of contacts' approach to determine 'which state has the most

---

[3] Underwriters have contemporaneously filed a Motion to Transfer this action to the United States District Court for the Southern District of Florida, where it should have been brought originally.

significant relationship to the transaction and the parties.'" *BMS Enters., Inc. v. Gen. Star Indem. Co.*, No. 14-cv-3375, 2015 WL 13650038, at *2 (S.D.N.Y. Mar. 11, 2015) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton*, 642 N.E.2d 1065, 1068 (N.Y. 1994)). In the context of insurance policies, courts examine five factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter; and (5) the place where claims under the policy were handled. *Zurich*, 642 N.E.2d at 1068.

The Policies were contracted for in Florida, where they were delivered. (Policies, Exhibits A & B, Form JNMA 2462). The Policies were also negotiated for in Florida by Plaintiffs' retail agent, USI Insurance Services, LLC, whose office is located in Coral Gables, Florida. (*Id.*). Plaintiffs' retail agent purchased the Policies in Florida, Florida is where Plaintiffs' principal places of business are located, and the parties contemplated that performance under the Policies would take place in Florida, as evident by the "Florida Changes" form in the Policies. (*Id.*; *see also* Policies, Exhibits A & B, Form CP 01 25 02 12). If the Claims were covered under the Policies, payment of the Claims, and thus, performance of the Policies would occur in Florida, because that is where the Plaintiffs are located. The Properties, which are the subject matter of the Policies, are located in Florida. (Doc. 1 ¶ 1). Lastly, adjustment for the Claims occurred in Florida. (Doc. 1 ¶ 39; Policies, Exhibits A & B). Thus, it should be undisputed that Florida is the state with the "most significant relationship to the transaction and the parties" and Florida law will govern the interpretation of the Policies.

### B. PLAINTIFFS' COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTIES COVERED BY THE POLICIES

The Complaint contains no plausible allegations that the Properties have suffered direct physical loss or damage. The Policies provide coverage for business income and extra expense losses if such losses are the result of "direct physical loss of or damage to" the insured properties.

(Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 1 of 9). Further, business income coverage and extra expense are only provided during the "period of restoration," which is the time it takes to repair, rebuild or replace the Property. (Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 9 of 9). Here, there has been no direct physical loss or damage to the Properties, as evidenced by the fact that there is nothing to repair, rebuild or replace at the Properties.

The plain language of the Policies "requires direct physical loss or damage to the properties in order to trigger payment" for a business income loss. *See Lubell & Rosen LLC v. Sentinel Ins. Co.*, Ltd., No. 0:16-CV-60429-WPD, 2016 WL 8739330, at *4 (S.D. Fla. June 10, 2016). Florida law places the initial burden on an insured seeking to recover under an all-risk policy of proving that a loss occurred. *See S.O. Beach Corp. v. Great Am. Ins. Co. of N.Y.*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019). An insured's pleading must sufficiently allege that its losses are covered within a policy's insuring agreement. *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1293 (M.D. Fla. 2016). "A complaint that does not 'contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face' is subject to dismissal." *Id*. at 1292 (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)).

Accordingly, to recover for business income loss, Plaintiffs must plead and then prove that they sustained damage to property that is insured by their Policies, that the damage was caused by a covered cause of loss, and that there was an interruption to their businesses that was caused by the property damage. *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 602 (S.D. Fla. 1997); *cf. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Texpak Grp. N.V.*, 906 So. 2d 300, 302 (Fla. 3d DCA 2005) (holding that business interruption and extra expense losses are covered "only if 'resulting from' damage or destruction of real or personal property caused by a covered peril.").

In the Complaint, Plaintiffs merely allege that the "presence of COVID-19 caused direct physical loss of or damage to the covered property . . . by denying use of and damaging the covered property, and by causing a necessary suspension of operations." (Doc. 1 ¶ 36). Plaintiffs also allege that "COVID-19 caused direct physical loss and damage" to the Properties. (Doc. 1 ¶ 57).

Under the federal rules, pleading the bare elements of a claim is insufficient—Plaintiffs "must include some supporting facts." *N.P.V. Realty Corp. v. Nationwide Mut. Ins. Co*., No. 8:11-CV-1121-T-17TBM, 2011 WL 4948542, at *4 (M.D. Fla. Oct. 17, 2011); *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995) ("[A] court cannot accept naked assertions in a complaint that does not set forth supporting allegations of facts.") (internal quotations omitted). Here, Plaintiffs make conclusory allegations that they have suffered direct physical damage, but the Complaint is devoid of any mention of what physical damage occurred, how the physical damage occurred, when the physical damage occurred, and what needs to be repaired, replaced, or rebuilt. Accordingly, none of Plaintiffs' allegations, even if taken as true, state a plausible claim that Plaintiffs have suffered a "direct physical loss or damage" as required to trigger coverage under the Policies. *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016) ("[I]t is not sufficient to plead that the Plaintiff has suffered damages in the form of 'direct physical damage to its property.'"); *cf. Mears v. Allstate Indem. Co.*, 336 F. Supp. 141, 146 (E.D.N.Y. 2018) ("The Court is not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted).

The phrase "direct physical loss or damage" "must be given its common meaning." *Rockhill Ins. Co. v. Northfield Ins. Co*., 297 F. Supp. 3d 1279, 1286 (M.D. Fla. 2017). The Southern District of Florida has concluded that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event

directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)). If the property can be cleaned and restored to its original function, no covered loss has been suffered. *Id.* (stating that "cleaning is not considered direct physical loss"). The relevant inquiry is whether the structure continues to function. Indeed, "[t]he fact that the restaurant needed to be cleaned more frequently does not mean [the plaintiff] suffered a direct physical loss or damage." *Id.* Furthermore, as stated by the oft-cited Couch on Insurance, and as explicitly adopted by Florida federal courts:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Id.* (quoting 10A Couch on Ins. § 148:46 (3d. Ed. West 1998)); *see also Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure.").

   In the context of a lawsuit seeking injunctive relief against an insurer for business income coverage related to COVID-19, Judge Caproni of this Court has already found that the virus and resulting disease do not cause physical loss or damage. Teleconference, Order to Show Cause at 4-5, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020) (Transcript with oral findings attached hereto as Exhibit I). With regard to COVID-19, the Court in *Soc. Life Magazine* noted: "It damages lungs.  It doesn't damage printing presses."  (*Id.*

at 4:25-5:4).[4] Additionally, another court recently granted summary disposition in favor of an insurer, finding there was no coverage for the plaintiff's COVID-19 related business income loss, because there was no direct physical loss of or damage to property. *See* Hearing, Motion for Summary Disposition at 27:20, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB at 20:5-9 (Mich. Cir. Ct. July 1, 2020) (Transcript with Oral Findings attached hereto as Exhibit J) ("Plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e. physical damage to the property.").

Moreover, the Policies only provide coverage for business income and extra expense losses that occur during the "period of restoration," which begins with the "direct physical loss or damage" and ends on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced . . . or (2) The date when business is resumed at a new permanent location." (Policies, Exhibits A and B, Form CP 00 30 10 12, at p. 9 of 9). Thus, it follows that for there to be coverage under the Policies' business income or extra expense coverage, Plaintiffs' losses must involve some physical damage to covered property that needs to be repaired, rebuilt, or replaced. As explained by the Southern District of New York, "the words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (citations omitted); *see also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

---

[4] Plaintiffs attempt to argue that COVID-19 caused loss of use, which is somehow "direct physical loss or damage." Such creative interpretations fail as federal courts applying Florida law, such as *Mama Jo's*, have rejected the notion that loss of use equates to physical damage. *Mama Jo's*, 2018 WL 3412974, at *9.

Any other reading of the Policies to allow recovery for Plaintiffs' Claims would render central contract terms superfluous. Under Florida law, "insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Further, "courts must not construe insurance policy provisions in isolation, but instead should read all terms in light of the policy as a whole, with every provision given its full meaning and operative effect." *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010) (citations omitted). Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998).

Thus, under the plain language of the Policies, coverage is only afforded for business income and extra expense losses, if those losses are caused by direct physical loss or damage. Here, Plaintiffs' Claims are solely economic in nature and do not relate to any sort of physical damage, and, therefore, are not covered under the Policies. *See Bahama Bay II Condo. Ass'n, Inc v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1278 (M.D. Fla. 2019) ("[C]ost of security guards and security fencing . . . is not property damage, or 'physical loss . . .' but is an economic loss. There is nothing in the Policy that covers economic loss."); *see also* Exhibit I, Order to Show Cause at 15 ("[T]his kind of business interruption needs some damage to the property . . . this is just not what's covered under these insurance policies.")

Accordingly, Plaintiffs' Complaint does not allege any facts that trigger coverage under the Policies and their claims fail as a matter of law.

### C.     PLAINTIFFS HAVE NOT PLED A VALID "CIVIL AUTHORITY" CLAIM

The allegations also fail to trigger the Policy's civil authority coverage. Under Florida law, the "policyholder bears the initial burden of proving that a loss occurred under the insuring agreement during the policy period." *Somethings Fishy Enter., Inc. v. Atl. Cas. Ins. Co.*, 415 F.

Supp. 3d 1137, 1142 (S.D. Fla. 2019). The civil authority coverage requires direct physical loss or damage to property near the insured property and further requires that access to the insured property is prohibited because of that damage. Plaintiffs' efforts to obtain civil authority coverage fail because the Complaint fails to allege (1) such physical damage, and (2) that access to the Properties has been prohibited because of such damage.

In the Complaint, Plaintiffs allege that "[t]he presence of COVID-19 caused direct physical loss of or damage to the covered property . . . by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration." (Doc. 1 ¶ 36).[5] Then, Plaintiffs allege that the subject government orders prohibited access to their Properties, as well as the "area immediately surrounding" the Properties. (Doc. 1 ¶ 37). However, these orders did not require the restaurants to close or prohibit access to the surrounding areas. In fact, Governor DeSantis encouraged all restaurants to continue providing take-out, delivery, and curbside services. (*See* Exhibit H).

Plaintiffs appears to assert that the subject government orders somehow trigger the Policies' coverage extension for civil authority coverage. (*See* Doc. 1 ¶¶ 28, 65, 99). As noted above, the civil authority coverage requires that "Covered Cause of Loss causes damage to property other than property at the described premises." A "Covered Cause of Loss" is defined as "direct physical loss." Accordingly, the first requirement of the civil authority coverage is that there be direct physical loss that causes damage to property other than the insured property. Next, because of that damage to nearby property, a civil authority must prohibit access to the insured property. The action of the civil authority must also be "taken in response to dangerous physical

---

[5] In Paragraph 36, Plaintiffs attempt to allege that *COVID-19* denied them use of their Properties. Notwithstanding the crucial facts that Plaintiffs were not denied use of the Properties, were able to maintain operations, and were not denied access to the Properties, any orders regulating the use of the Properties were issued by Florida governing bodies, not by the disease.

conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Policies, Exhibits A & B, Form CP 00 30 10 12, at p. 2 of 9). In other words, the civil authority must prohibit access to the insured location because the nearby property damage has created a dangerous condition, and that dangerous condition was caused by direct physical loss that causes damage to the other property. Plaintiffs fail to allege these necessary elements.

The plain language of the Policies makes clear that the coverage requires damage to property other than the described premises *and* an order of civil authority that, because of such damage, prohibits access to the insured's property. *See, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."). As explained above, COVID-19 does not cause physical damage or loss to property, and therefore, Plaintiffs cannot satisfy the conditions of the civil authority coverage extension. Even looking beyond that shortcoming, there are two more reasons why Plaintiffs cannot fulfill the conditions of the civil authority coverage extension: (1) access to the Properties has not been "prohibited;" and (2) the subject government orders were not taken "in response" to damaged property.

First, Plaintiffs' allegations that the subject government orders "prohibited access to Plaintiffs['] . . . Covered Property, and the area immediately surrounding Covered Property," is demonstrably false. (Doc. 1 ¶ 37). As previously detailed, Plaintiffs were never required to cease delivery, take-out, or pick-up services. No government order prevented Plaintiffs themselves, or their employees, from entering the Properties, and indeed certain orders actually encouraged access. Although Florida courts do not appear to have considered the issue, numerous other courts

have recognized that government orders that hamper access to insured property—but do not entirely *prohibit* it— are insufficient to trigger civil authority coverage. *See, e.g.*, *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (upholding denial of hotel operators' claim for lost business income sustained when customers cancelled visits due to order grounding flights after the 9/11 attacks); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007) (holding that civil authority provision was not triggered by Louisiana government order prior to Hurricane Katrina advising residents to stay off the streets because advisories did not "prohibit access" to the insured premises); *By Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006) (finding that road closures after wildfire did not prohibit access to insured's business); *54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) (holding that civil authority extension did not apply to insured who made lost business income claim due to city government's diversion of vehicular and pedestrian traffic in the proximity of its restaurant, because access to the restaurant was not denied). Since the civil authority extension requires Plaintiffs to show that access to their Properties was "prohibited" by civil authority, and Plaintiffs did not make any such allegations (nor indeed could they), the civil authority coverage does not apply.

Second, the subject government orders were not issued "in response" to physical damage to nearby property. Rather, the orders were issued as precautionary measures to prevent the further spread of COVID-19. In such situations, the civil authority extension is not triggered. *See Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995). As detailed in *Syufy*, after the return of the Rodney King verdict and subsequent riots, the cities of Los Angeles, San Francisco, and Las Vegas imposed dawn-to-dusk curfews. *Id.* at *1. An insured

movie theater operator, who ran theaters in all three cities, brought a business interruption claim because it closed its theaters during these curfew periods. *Id.* The court concluded there was no civil authority coverage because not only did the civil orders not specifically prohibit individuals from entering the theaters, but the "requisite causal link between damage to adjacent property and denial of access to a Syufy theater [was] absent." *Id.* at \*2. In other words, Syufy had closed its theaters as a "direct result of the city-wide curfews," not as a result of adjacent property damage. Furthermore, the court noted that even though the curfews were imposed to "prevent" property damage, they were not the result of the damage itself. *Id.* at \*2. Other courts have reached similar conclusions. *See United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) (holding civil authority coverage did not apply to airport's business interruption claim arising from grounding of flights after the 9/11 attacks because the order to ground flights and bar access to the airport was "to prevent further attacks and as a matter of national security," not because of damage to the Pentagon); *City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at \*4 (N.D. Ill. Mar. 18, 2004) ("The business interruption . . . was due to the ground stop order imposed by the FAA in order to prevent further terrorist attacks."); *cf. Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at \*4 (S.D. Fla. Oct. 19, 2007) ("[A] plain language reading of this section provides coverage when a peril—such as a windstorm—causes damage to property and, as a result, access to property is precluded by a civil authority order. The order of civil authority cannot in any reasonable manner be construed as a 'peril.'").

Plaintiffs cannot establish that physical damage occurred due to COVID-19, nor can they establish that the government orders, as specified and incorrectly characterized in the Complaint, prohibited access to the Properties. Moreover, these government orders were not taken "in

response" to covered physical damage, but were instead preventative measures issued for public health purposes. Accordingly, the Policies' civil authority coverage extension is not triggered.

### D.     COVERAGE IS BARRED BY THE POLLUTION EXCLUSIONS

The Complaint must be dismissed because Plaintiffs' Claims are excluded from coverage by the plain language of the Policies. When resolving insurance coverage disputes, courts "routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Cammarota v. Penn-Am. Ins. Co.*, No. 17-CV-21605-Williams, 2017 WL 5956881, at *2 (S.D. Fla. Nov. 13, 2017); *see also Arias-Bonello v. Progressive Select Ins. Co.*, No. 0:17-CV-60897-UU, 2017 WL 7792704, at *5 (S.D. Fla. Aug. 8, 2017) (dismissing putative class member's breach of contract claims because the claims were expressly excluded from the policy); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, No. 8:09-CV-2275-T-17TBM, 2010 WL 1949585, at *7 (M.D. Fla. May 14, 2010) (granting motion to dismiss under Rule 12(b)(6) because underlying lawsuit was not covered under the subject insurance policy). Here, even if Plaintiffs could demonstrate claims within the Policies' coverage grants (which they cannot), coverage nonetheless is barred by the Policies' pollution exclusions.

 The Policies contain two enforceable exclusions barring coverage for contaminants and contamination. First, the Policies contain the Seepage and/or Pollution and/or Contamination Exclusion, which provides:

> SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION USA & CANADA
>
> Notwithstanding any provisions to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy, this ***Policy does not insure***:
>
> (a) ***any loss, damage, cost or expense***, or
>
> (b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instructions or request of, or by agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation.)

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a Peril Insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

*  *  *

The term '*any kind of seepage or any kind of pollution and/or contamination*' as used in this Endorsement includes (but not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as 'hazardous material' by the United States Environmental Protection Agency or as 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) *the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons* or the environment.

(Policies, Exhibits A & B, Form NMA2340) (emphasis added).[6] The Policies also contain the following exclusion, which states:

2.      We will not pay for loss or damage caused by or resulting from any of the following:

*  *  *

l.      Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss."

(Policies, Exhibits A & B, Form CP 10 30 10 12, at p. 4 of 10). The term "pollutant" is defined, in part, as "any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

---

[6] Notably, the "pollutant/contamination" exclusion applies "[n]otwithstanding any provision to the contrary" and it does not replace or supersede any similar provisions.

fumes, acids, alkalis, chemicals and waste." (Policies, Exhibits A & B, Form CP 00 30 10 12, at p. 9 of 9). Under the plain language of either of these exclusions (collectively, the "Pollution Exclusions"), and Florida law, coverage for the Claims is excluded.

The Florida Supreme Court has recognized that pollution exclusions extend beyond merely "environmental or industrial pollution." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (holding that a claim arising from an ammonia spill fell within a pollution exclusion). Instead, the plain language of pollution exclusions should be enforced as written and Florida courts should not "place limitations upon the plain language of a policy exclusion simply because [they] may think it should have been written that way." *Id.* at 1139. This includes the term "contaminant," which the Florida Supreme Court held to be unambiguous. *See id.*

SARS-CoV-2, which causes COVID-19, undoubtedly qualifies as "contamination." The Southern District of Florida has recognized that "living organisms," "microbial populations," "microbial contaminants," and "indoor allergens" fit the ordinary definition of a "contaminant." *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006). In *Nova*, the Court reasoned that these substances "infected the plaintiffs' bodies or made them impure by contact, thereby fitting the ordinary meaning of a 'contaminant,' and having an effect commonly known as 'contamination.'" *Id.* Relatedly, a pollution exclusion has been expressly held to exclude coverage for a claim arising from "viral contaminants" and "harmful microbe[s]" found in an insured's swimming pool, from which a guest alleged that he contracted the Coxsackie virus. *See First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009); *see also James River Ins. Co. v. Epic Hotel, LLC*, No. 11-CV-24292-UU, 2013 WL 12085984, at *4 (S.D. Fla. Jan. 9, 2013) (applying pollution exclusion to bar

coverage for claims arising from Legionnaire bacteria). Other courts have reached analogous conclusions. *See, e.g.*, *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003) (applying a pollution exclusion to sewage water that was alleged to contain "pathogens, carcinogens, and disease carrying organisms including but not limited to HIV viruses, *e. coli* bacteria, hepatitis (all strains), and other bacteria"); *Certain Underwriters at Lloyd's London v. B3, Inc.*, 262 P.3d 397, 400-401 (Okla. Ct. App. 2011) (holding a pollution exclusion applied to claim stemming from contaminated water alleged to contain, among other things, "bacteria (including E. Coli) [and] viruses").

The Policies' definitions of "contamination" and "pollutant" unambiguously encompass SARS-CoV-2 and the disease it causes. Just as the Court reasoned in *Nova*, SARS-CoV-2 is a virus that infects peoples' bodies, thereby fitting the ordinary meaning of "contaminant." *Nova Cas. Co.* 424 F. Supp. 2d at 1334. Similarly, under pollution exclusions like the Policies' "pollution exclusion," claims stemming from viruses are precluded from coverage, as demonstrated by the Southern District of Florida's decision in *First Specialty Ins. Corp*. *See* 2009 WL 2524613, at *4-5. SARS-CoV-2 has been "designated or defined" as "dangerous" by both Federal and State ordinances or regulations. Indeed, the U.S. Department of Health and Human Services has determined that the "SARS coronavirus" (SARS-CoV), to which SARS-CoV-2 is related,[7] is a "biological agent . . . and toxin" with "the potential to pose a severe threat to public health and safety." 42 C.F.R. § 73.3(a) & (b) (2017). Moreover, in the subject executive orders issued by Governor DeSantis, the Governor stated that he is "responsible for meeting the *dangers* presented

---

[7] *See COVID-19, MERS & SARS*, Nat'l Inst. of Allergy & Infectious Diseases (April 6, 2020), https://www.niaid.nih.gov/diseases-conditions/covid-19; Alping Wu, et al, *Genome Composition & Divergence of the Novel Coronavirus (2019-nCov) Originating in China*, Commentary, 27 Cell Host & Microbe 325, 326 (Mar. 11, 2020) ("[T]he 2019-nCov is in the same *Betacoronavirus* clade as MERS-CoV, SARS-like bat CoV, and SARS-CoV.").

to this state and its people by [COVID-19]." (Exhibit F (emphasis added)); *see also* Exhibit H). Thus, COVID-19 has been defined as dangerous to human health by both the federal government and government of Florida.

Having established that SARS-CoV-2 would qualify as a pollutant and/or contaminant under the Policies and Florida law, the Pollution Exclusions clearly apply, given that they exclude coverage for claims "arising from" or "resulting from" contamination. (Policy, Exhibits A & B, Form NMA2340). Causation phrases such as these are broadly construed in Florida. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (holding that causation phrase "arising out of" is broader than "caused by" as used in an exclusion). Moreover, Plaintiffs assert that the subject government orders, which give rise to their Claims, were issued "in response to the rapid spread of COVID-19 throughout Florida." (Doc. 1 ¶ 35). Accordingly, the Claims as alleged arose from or resulted from COVID-19 and are excluded from coverage under the Policies.

### E.   COUNTS I, II, III AND IV FAIL TO ALLEGE UNDERWRITERS HAVE BREACHED THE POLICY

Plaintiffs have not stated valid claims for breach of contract. To sufficiently plead a claim for breach of contract under Florida law, a plaintiff "must assert the existence of a contract, a breach of such contract, and damages resulting from such breach." *Cruz v. Underwriters at Lloyd's London*, No. 8:14-CV-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014). While Plaintiffs' 113-paragraph Complaint sets forth an expansive background facts section, it fails to allege specific facts supporting its claims of breach in Counts I, II, III, and IV.

Plaintiffs allege that "[b]y denying coverage" Underwriters "breached [their] coverage obligations" and conclusory allege that their alleged losses trigger the Policies' business income, civil authority, and extra expense coverages, and the Policies' sue and labor clauses. l (Doc. 1 ¶¶ 57, 59, 65, 67, 74, 76, 82, 84). However, Plaintiffs fail to include necessary factual information

to support these claims. These allegations are wholly conclusory and must, therefore, be dismissed. *See Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (dismissing claims for breach of contract because plaintiff failed to allege sufficient factual information to support its claims*); Davidson v. Ga.*, 622 F.2d 895, 897 (11th Cir. 1980) ("When the allegations contained in a complaint are wholly conclusory ... and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim."); *see also Timber Pines Plaza*, 2016 WL 8943313, at *2 ("To be clear, it is not sufficient under *Iqbal* to merely plead that the Defendant breached the Policy by failing to pay the benefits owed under the Policy.").

Moreover, even if Plaintiffs' allegations are considered true, Underwriters have not breached the Policy because there is no coverage for Plaintiffs' Claims. Accordingly, Plaintiffs have failed to sufficiently plead that coverage is provided by the Policies, as the express language of the Policies expressly contradicts Plaintiffs' allegations that their losses are covered under the Policies. *See Cruz*, 2014 WL 3809179, at *4 (finding that plaintiff failed to sufficiently plead that its loss was covered under a policy, since the express language of an exclusion contradicted plaintiff's allegations that its claim was covered).

Furthermore, with regards to Plaintiffs' "Sue and Labor" claim, it is well-settled that "Sue and Labor" clauses require that "an actual covered loss must have occurred or be in process before the [insured] can recover under this provision for the expenses claimed." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 168 (Fla. 2003); *see also Residences at Ocean Grande, Inc. v. Allianz Global Risks U.S. Ins. Co.*, No. 07-22656-CIV, 2009 WL 7020044, at *14 (S.D. Fla. Sept. 9, 2009) (holding the same in regards to a Sue and Labor provision that provided for expense "[i]n case of loss or damage"); *cf. Continental Food Prods., Inc. v. Ins. Co. of N. Am.*, 544 F.2d 834,

837 n. 1 (5th Cir. 1977) ("The 'sue and labor' clause does not operate as enlargement of the perils underwritten against."). The Policies' Sue and Labor clauses specifically state that Underwriters "will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss." (Policies, Exhibits A and B, Form CP 00 30 10 12, p. 5 of 9). For the reasons set forth above, there is no covered loss under the Policies, and thus, the Sue and Labor provisions are not triggered.

Accordingly Counts I, II, III, and IV for breach of contract must be dismissed.

## V.   **CONCLUSION**

Plaintiffs have failed to satisfy their burden to plead facts that would give rise to a covered claim. Additionally, Plaintiffs cannot allege facts that sufficiently demonstrate they have suffered direct physical loss of or damage to their Properties. Even if Plaintiffs could allege a covered cause of loss, their Claims are unambiguously excluded under the Policies' Pollution Exclusions.

Thus, for the foregoing reasons, Underwriters respectfully request the Court dismiss Plaintiffs' Complaint.

Respectfully submitted this 29th day of July, 2020.

*Peter J. Fazio*

BY:  Peter J. Fazio, Esq.
AARONSON RAPPAPORT FEINSTEIN &
DEUTSCH, LLP
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Subscribing to Policy Nos. ARP-74910-20 and
ARP-75209-20
Office & P.O. Address
600 Third Avenue
New York, NY  10016
212-593-6700

To: All Parties VIA ECF

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2020, the foregoing Memorandum of Law in Support of the Motion to Dismiss was electronically filed with the Clerk of Court, United States District Court for the Southern District of New York and said Memorandum of Law shall be deemed served by electronic notification of the Court's CM/ECF system as copy was served via e-mail upon the following:

Greg G. Gutzler
**DICELLO LEVITT GUTZLER LLC**
444 Madison Avenue, Fourth Floor
New York, New York 10022

Adam J. Levitt
Amy E. Keller
Daniel R. Ferri
Mark Hamill
Laura E. Reasons
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

Mark A. DiCello
Kenneth P. Abbarno
Mark Abramowitz
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060

Mark Lanier
Alex Brown
Skip McBride
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064

Evan Janush
**THE LANIER LAW FIRM PC**
126 East 56th Street, Sixth Floor
New York, New York 10022

Timothy W. Burns
Jeff J. Bowen*
Jesse J. Bair
Freya K. Bowen
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703

Douglas Daniels
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057

26